LAW OFFICES OF RONALD A. MARRON, APLC
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile:  (619) 564-6665
***Attorneys for Plaintiffs and the Proposed Class***

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIANNE MORRIS and NIKKI COOK, individually and on behalf themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>   v.<br><br>MOTT'S LLP, a Delaware partnership,<br><br>          Defendant. | Case No.: 8:18-cv-01799-AG-ADS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br><br>Date:  February 25, 2019<br>Time:  10:00 a.m.<br>Ctrm:  10D<br>Judge: Hon. Andrew J. Guilford |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................1

II.     FACTUAL BACKGROUND..........................................................2

III.    LEGAL STANDARD ....................................................................4

IV.     ARGUMENT .................................................................................5

   A. Plaintiffs' Malic Acid Claims Are Not Preempted ........................5

   B. Plaintiffs Adequately Allege that D-L-Malic Acid is an Artificial Flavor .....6

   C. Defendant Unlawfully Labels its Products by Failing to Disclose the Common or Usual Name of Artificial d-l-Malic Acid ...................................9

   D. Plaintiffs Adequately State Claims for Fraud by Omission and Negligent Misrepresentation ..........................................................11

     *1. Plaintiffs Adequately State a Claim for Fraud by Omission* ...................11

     *2. Plaintiffs Adequately State a Claim for Negligent Misrepresentation* .....12

   E. Whether a Reasonable Consumer Would be Misled Is Not Appropriate for Determination on a Motion to Dismiss ........................................13

   F. Plaintiffs Adequately Allege Claims for Breach of Warranties ...................16

V.      CONCLUSION.............................................................................17

- i -

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allred v. Frito-Lay N. Am., Inc.*,
    2018 WL 1185227 (S.D. Cal. Mar. 7, 2018) ................................................. passim

*Allred v. Kellogg Co.*,
    WL 1158885 (S.D. Cal. Feb. 23, 2018) ...................................................... passim

*Ashcroft v. Iqbal*,
    556 U.S. 662, 697 (2009) ......................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................4

*Branca v. Bai Brands, LLC*,
    No. 18-cv-0757-BEN-KSC (S.D. Cal., filed Apr. 19, 2018) ...............................9

*Burton v. Time Warner Cable Inc.*,
    2013 WL 3337784 (C.D. Cal. Mar. 20, 2013) .....................................................5

*Clancy v. The Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) .........................................................................5

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) .............................................................................12

*Conley v. Gibson*,
    355 U.S. 41, 47 (1957) ..........................................................................................4

*Davis v. HSBC Bank Nevada, N.A.*,
    691 F.3d 1152 (9th Cir. 2012) ............................................................................15

*Davison v. Santa Barbara High School District*,
    48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998) .........................................................5

*Dephillippis v. Living Essentials, LLC*,
    2018 WL 7051065 (S.D. Cal. Nov. 29, 2018) ......................................................2

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................................17

- ii -

*Engurasoff v. Coca-Cola Co.*,
   2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ....................................................8

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014) ...................................................6

*Gitson v. Trader Joe's Co.*,
   2014 WL 1048640 (N.D. Cal. Mar. 14, 2014) ....................................................8

*Henderson v. J.M. Smucker Co.*,
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ....................................................15

*Hilsley v. Ocean Spray Cranberries, Inc.*,
   2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) ............................................7, 9

*Hu v. Herr Foods, Inc.*
   251 F. Supp. 3d. 813 (E.D. Pa. 2017) ......................................... 14, 15

*In re Easysaver Rewards Litig.*,
   737 F. Supp. 2d 1159 (S.D. Cal. 2010) ....................................................8

*In re Farm Raised Salmon Cases*,
   42 Cal. 4th 1077 (2008) ....................................................5

*Ivie v. Kraft Foods Global, Inc.*,
   2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ....................................................8

*Kanfer v. Pharmacare US, Inc.*,
   142 F. Supp. 3d 1091 (S.D. Cal. 2015) .................................................17

*Knievel v. ESPN*,
   393 F.3d 1068, 1072 (9th Cir. 2005) ....................................................4

*Lilly v. ConAgra Foods, Inc.*,
   743 F.3d 662 (9th Cir. 2014) ....................................................15

*Sagan v. Apple Computer, Inc.*,
   874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ....................................................5

*Sims v. Campbell Soup Co.*,
   No. 18-cv-668 (C.D. Cal. Sept. 24, 2018). ....................................................13

- iii -

*Stapley v. Pestalozzi*,
  733 F.3d 804 (9th Cir. 2013) ................................................................8

*Starr v. Baca*,
  652 F.3d 1202, 1216 (9th Cir. 2011) ....................................................5

*Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc*.,
  196 Cal. App. 4th 1559 (2011) ...........................................................12

*Williams v. Gerber Prod. Co*.,
  552 F.3d 934 (9th Cir. 2008) ..............................................................15

*Wilson v. Frito-Lay N. Am., Inc*.,
  2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ....................................5, 6

**Statutes**

21 U.S.C. § 343(i) ...................................................................................10

Cal. Bus. & Prof. Code §§ 17200, *et seq.* .............................................3

Cal. Bus. & Prof. Code §§ 17500, *et seq.* .............................................3

Cal. Civ. Code §§ 1750, *et seq* ..............................................................3

Cal. Com. Code §§ 2314 .......................................................................17

Cal. Health & Safety Code § 109875 .....................................................6

Cal. Health & Safety Code § 110100(a) .................................................5

Cal. Health & Safety Code §§ 109875, *et seq.* .....................................3

**Rules**

Fed. R. Civ. P. 8 .....................................................................................4

Fed. R. Civ. P. 8(e) .................................................................................5

**Regulations**

21 C.F.R. § 101.22(i)(2) ...........................................................................8

21 C.F.R. § 101.4(a) .................................................................................9

21 C.F.R. § 101.4(a)(1) .............................................................................3

21 C.F.R. § 101.4(b) ...............................................................................10

21 C.F.R. § 170.3(o)(11) ...........................................................................8

1

21 C.F.R. § 184.1069(a) ............................................................................10

21 CFR § 101.22 ..........................................................................................3

21 CFR § 101.4(a)(1) ..............................................................................10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Morris v. Motts, LLP,* Case No. 8:18-cv-01799-AG-ADS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiffs Adrienne Morris and Nikki Cook ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in Support of their Opposition to the Motion to Dismiss Plaintiffs' First Amended Complaint that was filed by Defendant Mott's LLP ("Defendant") on January 9, 2019. (ECF No. 24).

## I.     __INTRODUCTION__

This is a consumer protection class action concerning Defendant's failure to disclose an artificial flavoring ingredient in its Mott's Fruit Flavored Snack products (the "Products" or "Fruit Snack Products"). (*See generally* First Amended Complaint ("FAC"), ECF No. 22). The FAC alleges that "the Products are labeled as if they are flavored only with natural ingredients when they in fact contain an undisclosed artificial flavor, malic acid, in violation of state and federal law." (FAC ¶ 7). In fact, the Products' front labels prominently state that the Products are "Made with REAL Fruit & Veggie Juice." (FAC ¶ 16). What's more, Defendant's most current packaging promises that the Products are "naturally flavored" and contain "NO artificial flavors." (FAC ¶ 17). However, the FAC alleges that Defendant "flavors the Products with a synthetic industrial chemical called d-1 malic acid, in the form of a racemic mixture of d- and 1-isomers." (FAC ¶ 27). "This type of 'malic acid' is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane – components of gasoline and lighter fluid, respectively – through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." (FAC ¶ 29).

In its Motion to Dismiss the FAC ("Def.'s Mot."), Defendant argues that Plaintiffs' claims should be dismissed because the d-l-malic acid used in the Products does not function as an artificial flavor. However, in their FAC, Plaintiffs adequately allege that the d-l-malic acid, which has a tart taste similar to that of the fruit-flavored Products, functions as an artificial flavoring ingredient in the Products. What's more, Defendant concedes that multiple California district courts have recently rejected this exact argument. (Def's Mot. 15:4-11). In response to these

- 1 -

1   cases, Defendant simply contends that all those courts were wrong. *Id*. As discussed
2   more fully below, none of Defendant's grounds for dismissal are persuasive. Other
3   courts in California have previously rejected each of Defendant's arguments and
4   declined to dismiss similar cases involving the use of malic acid as an artificial
5   flavoring ingredient. *See, e.g., Dephillipis v. Living Essentials, LLC*, No. 3:18-cv-
6   00404-BEN-MDD, 2018 WL 7051065, at *1 (S.D. Cal. Nov. 29, 2018)
7   ("*Dephillipis*"); *Allred v. Frito-Lay N. Am., Inc*., No. 17-CV-1345 JLS (BGS), 2018
8   WL 1185227 (S.D. Cal. Mar. 7, 2018) ("*Frito-Lay*"); *Allred v. Kellogg Co.*, No. 17-
9   CV-1354-AJB-BLM, 2018 WL 1158885 (S.D. Cal. Feb. 23, 2018) ("*Kellogg*"). This
10  Court should reach the same conclusion and deny Defendant's Motion to Dismiss.

## II.   <u>FACTUAL BACKGROUND</u>

12      This action was originally filed on October 4, 2018. (*See* ECF No. 1).
13  Defendant filed a Motion to Dismiss Plaintiff Morris's complaint on December 5,
14  2018. (ECF No. 15).  Plaintiffs Adrienne Morris and Nikki Cook ("Plaintiffs") then
15  filed the operative First Amended Complaint on December 26, 2018. (ECF No. 22,
16  First Amended Complaint ("FAC")). Plaintiffs' FAC concerns Defendant's failure
17  to disclose an artificial flavoring ingredient in its Mott's Fruit Flavored Snacks
18  products, including without limitation, Mott's Fruit Flavored Snacks Assorted Fruit,
19  Mott's Fruit Flavored Snacks Berry, Mott's Fruit Flavored Snacks Tropical, Mott's
20  Fruit Flavored Snacks Assorted Fruit Plus Fiber, and Mott's Fruit Flavored Snacks
21  Fruity Rolls (collectively, the "Products"). (FAC ¶ 6). The Products claim to be
22  "Made with REAL Fruit & Veggie Juice," and several claim to be "naturally
23  flavored" and made with "NO artificial flavors." (FAC ¶¶ 16-17). The FAC alleges
24  "Defendant's labeling and advertising scheme is deliberately intended to give
25  consumers the false impression that the Products are composed only of natural
26  flavors from assorted fruit and vegetable flavors." (FAC ¶ 14). However, "Defendant
27  instead flavors the Products with a synthetic industrial chemical called d-l malic
28  acid, in the form of a racemic mixture of d- and l-isomers." (FAC ¶ 27). "Although

the malic acid that is placed in the Products to simulate a fruity flavor is the d-l-malic acid – the artificial petrochemical – Defendant pretends otherwise, conflating the natural and artificial flavorings, misbranding the Products, and deceiving consumers." (FAC ¶ 31).

"Plaintiff Adrienne Morris purchased Mott's Fruit Snack Products in California during the Class Period defined herein." (FAC ¶ 54). "Plaintiff Nikki Cook purchased Mott's Fruit Snack Products periodically since 2015 in the Central District of California." (FAC ¶ 56). "Plaintiffs were deceived by and relied upon Mott's Products' deceptive labeling, and specifically the omission of the legally-required notice that they contained artificial flavoring." (FAC ¶ 60). Plaintiffs contend "the labels of the Products violate California and federal statutes and state common law in multiple respects." (FAC ¶ 19). "First, because each of the Products contain additional flavoring ingredients that simulate and reinforce the characterizing flavor, the front labels are required by law to disclose those additional flavors rather than misleadingly claim that the Products are 'naturally flavored' and contain 'NO artificial flavors.'" (FAC ¶ 20) (citing Cal. Health & Safety Code §§ 109875, *et seq.*, ("Sherman Law"), incorporating 21 CFR § 101.22). "Second, the Products' ingredients list violates federal and state law because it identifies, misleadingly, the malic acid flavoring only as the general 'malic acid' instead of using the specific, non-generic name of the ingredient. (*See* 21 C.F.R. § 101.4(a)(1))." (FAC ¶ 21). "Even more deceptive, however, is the fact that the Products – rather than having 'NO Artificial Flavors' and being 'Naturally Flavored,' as the labels claim – contain an undisclosed artificial flavor made from petrochemicals. Defendant conceals this from consumers." (FAC ¶ 22).

Plaintiffs allege that Defendant violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

- 3 -

("FAL"), and Plaintiffs further bring causes of action for fraud, negligent misrepresentation, and breach of express and implied warranties. (*See generally* FAC). Plaintiffs seek to represent a nationwide class of "[a]ll U.S. citizens who purchased the Products in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff." (FAC ¶ 69). Plaintiffs also seek to represent a California sub-class of "[a]ll California citizens who made retail purchases of the Products in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff." (FAC ¶ 70).

### III.   LEGAL STANDARD

A pleading that sets forth a claim for relief "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957) *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts "allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Thus, to survive a motion to dismiss, a Plaintiff is required to allege only "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The Ninth Circuit has clarified that (1) a complaint must 'contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,' and (2) 'the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Burton v. Time Warner Cable Inc.*, No. CV 12-06764 JGB

- 4 -

AJWX, 2013 WL 3337784, at *2 (C.D. Cal. Mar. 20, 2013) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

The liberal pleading standard applied by federal courts comports with Rule 8(e), which says "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e); *C.f. Sagan v. Apple Computer, Inc*., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) ("Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted."); *Davison v. Santa Barbara High School District*, 48 F.Supp.2d 1225, 1228 (C.D. Cal. 1998) ("If the moving party could obtain the missing detail through discovery, the motion should be denied.").

## IV.   <u>ARGUMENT</u>

### A. Plaintiffs' Malic Acid Claims Are Not Preempted

Defendant first argues that Plaintiffs' claims are preempted. (Def.'s Mot. at 4-6). "When Congress passed the FDCA and its subsequent amendments creating national uniform nutrition labeling, it expressly preempted state law that was inconsistent with its requirements." *Clancy v. The Bromley Tea Co*., 308 F.R.D. 564, 573 (N.D. Cal. 2013). "However, it did not attempt to completely preempt state laws regarding the marketing of food products. To the contrary, Congress specifically anticipated states enacting their own identical laws." *Id*. (citing *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)). "California complied with this requirement in passing the Sherman Law, which expressly adopts the federal labeling requirement." *Id*. Under the Sherman Law, "All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act ... shall be the food regulations of this state." *See* Cal. Health & Safety Code § 110100(a).

Because Plaintiffs here are attempting to impose only state law requirements that are identical to those of the federal FDCA, the plaintiffs' claims are not preempted. *Frito-Lay*, 2018 WL 1185227, at *2. Instructive here is the case of *Wilson v. Frito-Lay N. Am., Inc*., where the court held that "[s]ince Plaintiffs' state law claims rely on statutes that explicitly incorporate federal law and regulations

- 5 -

without modification, and since those claims also do not attempt to impose stricter requirements than those laws or regulations, Plaintiffs' state law claims are not preempted. These claims are all based on the theory that by not complying with the relevant federal laws and regulations, Defendant's labels mislead and deceive consumers." No. 12-1586 SC, 2013 WL 1320468, at *9 (N.D. Cal. Apr. 1, 2013); *see also Figy v. Frito-Lay N. Am., Inc*., 67 F. Supp. 3d 1075, 1082 (N.D. Cal. 2014) ("Plaintiffs' state law claims are based on California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code § 109875 *et seq*., which adopts and incorporates the FDCA."). Here, Plaintiffs' state law claims are likewise based on violations of California's Sherman Law, which is identical to the FDCA. (FAC ¶ 36). Defendant argues that "Plaintiffs seek to impose on Mott's a duty to label the Fruit Flavored Snacks as 'artificially flavored' when federal regulations do not require such a label." (Def.'s Mot. at 6:6-8). As discussed further below, this is not correct. Plaintiffs are seeking to hold Defendant liable for conduct that is unlawful under both state and applicable federal regulations. The Court in *Allred v. Frito-Lay* accordingly held that similar claims concerning malic acid are not preempted. *See Frito-Lay,* 2018 WL 1185227, at *3-5. This Court should reach the same conclusion here.

## B. Plaintiffs Adequately Allege that D-L-Malic Acid is an Artificial Flavor

Defendant argues "the Amended Complaint contains no non-conclusory allegations that the malic acid as used in the Fruit Flavored Snacks functions as a flavor, as opposed to as a pH control agent." (Def.'s Mot. 8:15-18). This is also not correct. Plaintiffs' FAC alleges that "Mott's Assorted Fruit Snack Product's front label prominently displays a picture of apples, pears, strawberries, carrots, and other fruits and vegetables." (FAC ¶ 16), and that these are the "characterizing flavors" of the Products. The FAC goes on to allege that, "The Products, however, contain a

- 6 -

synthetic chemical flavoring compound identified as 'd-l-malic acid.'[1]  This 'd-l-malic acid' is an inexpensive synthetic chemical used in processed food products to make them taste like tangy fresh fruits – like blueberries, lemons, mangos, or cherries, and in the Products Plaintiffs purchased, like berries, tropical fruit and other assorted fruit flavors." (FAC ¶ 18). The FAC therefore alleges that "[t]he d-l-malic acid is a flavoring material, which is included in the Products to create, simulate, or reinforce the Products' characterizing fruit flavors." (FAC ¶ 114). Plaintiffs' FAC rises well above the level of mere speculation; it plausibly alleges that the d-l-malic acid ingredient in the Products is an artificial flavoring ingredient.

Additionally, that the FDA regulations permit listing individual flavors collectively as "flavors" or "artificial flavors" does not mean that individual flavors may *not* be listed on the ingredient list as Defendant suggests. (*See* Def.'s Mot. at 9:14-15). Instead, the FDA gives the *option* to list flavors individually or collectively. Notwithstanding, Defendant does neither. Defendant does not disclose its use of d-l-malic acid to consumers and instead lists the generic name "malic acid" in the ingredient list. Further, Defendant labels the Products as "naturally flavored," "Made with REAL fruits and vegetables," and "no artificial flavors," thereby concealing the use of artificial ingredients from consumers – a result that the FDA regulations specifically seek to prevent.

Further, whether the malic acid is used as an acidulant, for pH control, or for its flavoring properties is a disputed factual question. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) (denying a defendant's motion for summary judgement where plaintiff offered expert testimony that malic acid functions as a flavoring ingredient rather than a pH control agent in the products). For purposes of ruling on Defendant's

---

[1] Plaintiffs tested the Products for artificial d-l-malic acid and confirmed that they contained the synthetic version of the chemical. (FAC ¶ 28).

Motion to Dismiss, the allegations in the FAC are taken as true and construed in the light most favorable to Plaintiffs. *See Stapley v. Pestalozzi*, 733 F.3d 804, 809 (9th Cir. 2013) ("All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1166 (S.D. Cal. 2010). Because Plaintiffs have plausibly alleged that the d-l-malic acid functions as a flavoring agent in the Products, Defendant's vague conjecture in opposition— that it is not a flavor— is "inappropriate for determination on a motion to dismiss." *Ivie*, 2013 WL 685372, at *10.

As the Court in *Frito-Lay* held, "[t]he distinction between an artificial flavor that 'simulates, resembles or reinforces' the characterizing flavor, 21 C.F.R. § 101.22(i)(2), and a 'flavor enhancer' that does not impart its own taste, 21 C.F.R. § 170.3(o)(11), in this instance is a factual determination" and "[w]hether malic acid falls into one of these categories is also a factual determination that would be inappropriately resolved on a motion to dismiss." *Frito-Lay*, 2018 WL 1185227, at *5; *see also Kellogg*, 2018 WL 1158885, at *2 ("At this stage, the Court cannot look beyond the pleadings and must take reasonable allegations as true. Both of these hurdles are appropriate for summary judgment, but at this stage, the Court finds Allred has sufficiently pled the ingredients are artificial and used as flavoring agents."); *Engurasoff v. Coca-Cola Co.*, No. C 13-3990 JSW, 2014 WL 4145409, at *3-4 (N.D. Cal. Aug. 21, 2014) (finding that "it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014) ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors...."); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual determinations of whether [the ingredients are] used as a sweetener and/or ... a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners

- 8 -

or preservatives' label, are inappropriate for determination on a motion to dismiss."). This Court should agree with the reasoning of these district courts and hold that it cannot make a factual determination at this stage as to whether d-l-malic acid is an artificial flavor.

Defendant also argues that "no substance, including malic acid, is sufficiently flexible in its flavor profile to impart the sour taste of vinegar in one product and the sweet taste of sugary tea in another product." (Def.'s Mot. at 10:9-11). Defendant also mischaracterizes the complaint in *Branca v. Bai Brands, LLC*, No. 18-cv-0757-BEN-KSC (S.D. Cal., filed Apr. 19, 2018) by stating that the plaintiff there alleged that malic acid "serves as a flavoring function in sweet tea." (Def.'s Mot. at 10:6-8). This is incorrect. The *Bai* case concerns fruit flavored beverage products— not sweet tea products— and the plaintiff in *Bai* similarly alleges that malic acid confers a "tart, fruity" flavor. *See Branca v. Bai Brands, LLC*, No. 18-cv-0757-BEN-KSC (S.D. Cal.) (ECF No. 3, First Amended Complaint at ¶ 38). The *Bai* case is fully consistent with Plaintiff's allegations that the malic acid in the Mott's Fruit Flavored Snack products likewise confers a "tart, fruity" flavor. (FAC ¶ 30). Accordingly, Plaintiffs' claims are plausible and Defendant's Motion to Dismiss should be denied.

## C. Defendant Unlawfully Labels its Products by Failing to Disclose the Common or Usual Name of Artificial d-l-Malic Acid

Defendant argues that it is not required to list the specific isomer of malic acid that it uses in the Products' ingredient list. (*See* Def.'s Mot. at 11-12). However, when an ingredient has a unique name and a common, generic name, particularly when as here the common name is ambiguous and could refer to more than one ingredient, the label must identify the ingredient by its specific name, not its common name. 21 C.F.R. § 101.4(a); *see also Hilsley*, 2018 WL 5617701, at *7 (discussing 21 C.F.R. § 101.4(a)). As the FAC alleges "[t]here is a naturally-occurring compound sometimes referred to informally or generically as malic acid. The natural form of malic acid is correctly and specifically identified as 'l-malic

- 9 -

acid.'" (FAC ¶ 26). "That, however, is not what Defendant puts in the Products. Defendant instead flavors the Products with a synthetic industrial chemical called d-1 malic acid, in the form of a racemic mixture of d- and 1-isomers." (FAC ¶ 27). "This type of 'malic acid' is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane – components of gasoline and lighter fluid, respectively – through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." (FAC ¶ 29). Because Defendant has failed to disclose its use of the artificial d-l-malic acid in the Product, it has not used the specific, non-generic name of the ingredient and has therefore violated 21 CFR § 101.4(a)(1) and California's Sherman Law. (*See* FAC ¶ 23).

Defendant's argument on this issue was also rejected by the *Frito-Lay* Court. *See Frito-Lay*, 2018 WL 1185227, at *3. While a food is misbranded if its label does not bear the "common or usual name of each ... ingredient". 21 U.S.C. § 343(i); *see also* 21 C.F.R § 101.4(a)(1) this federal regulation also states "[t]he name of an ingredient shall be a specific name and not a collective (generic name)." 21 C.F.R. § 101.4(b). Food manufacturers must comply with both requirements, § 101.4(a) and § 101.4(b). Defendant here cites to 21 C.F.R. § 184.1069(a), which states "[m]alic acid ... is the common name for 1–hydroxy–1, 2–ethanedicarboxylic acid." This regulation "goes on to identify two forms of malic acid: L-malic acid, which 'occurs naturally in various foods' and DL-malic acid, which does not." *Frito-Lay*, 2018 WL 1185227, at *3. As stated by the *Frito-Lay* Court:

> While Defendants argue malic acid is the "common name of all forms of malic acid," [] this assertion does not find support in the regulations. Indeed, "malic acid" is the common name "for 1–hydroxy–1, 2–ethanedicarboxylic acid." 21 C.F.R. § 184.1069(a). If Plaintiffs were arguing Defendants should list "1–hydroxy–1, 2–ethanedicarboxylic acid" on the Product's ingredient list, that would be a different story. But it is clear there are two forms of malic acid, thus, Plaintiffs argue

- 10 -

1
2
3
4
5

     d-l malic acid is the specific name for one type of malic acid. And, 21 C.F.R. § 184.1069(a), the regulation on malic acid, states that the "ingredients" (plural) are used in food, thus, it is plausible that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid.

6

*Id.* This Court should reach the same conclusion here.

7
8

### D. Plaintiffs Adequately State Claims for Fraud by Omission and Negligent Misrepresentation

9
10
11
12
13
14
15
16
17
18
19
20

     Defendant seeks dismissal of Plaintiffs' claims for fraud by omission and negligent misrepresentation. Defendant claims that "there has been no misrepresentation or omission" because the d-l-malic acid does not "function[] as a flavor." (Def's Mot. 12:13-28). This argument again simply denies Plaintiffs' factual allegations. As discussed above, Plaintiffs have adequately alleged that the d-l-malic acid, which resembles and reinforces the tart taste of fruit,  functions as a flavoring agent in the fruit-flavored Products. Defendant's claims that the Products are "naturally flavored" and contain "No artificial flavors," and Defendant's omission of an "artificially flavored" disclosure, all misrepresent the actual contents of the Products. (*See* § IV:B at p. 12, above). Defendant's argument is simply incorrect, as Plaintiffs have adequately alleged causes of action for both fraud by omission and negligent representation.

21

### 1. Plaintiffs Adequately State a Claim for Fraud by Omission

22
23
24
25
26
27
28

     A failure to disclose a fact can also constitute actionable fraud or deceit when: (1) the defendant is the plaintiff's fiduciary; (2) the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins v. eMachines, Inc.,* 202 Cal. App. 4th 249, 255, 134 Cal. Rptr. 3d 588, 593 (2011). Plaintiffs allege that Defendant actively concealed the

- 11 -

*Morris v. Motts, LLP,* Case No. 8:18-cv-01799-AG-ADS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

material fact that the Products contain artificial flavoring. The FAC alleges, "Defendant actively concealed the truth about the Products by not disclosing the existence of artificial flavoring ingredients on the front label of the Products as is required by California and federal law." (FAC ¶ 90). "Plaintiffs and the Class were unaware of these omitted material facts and would not have purchased the Products, or would have paid less for the Products, if they had known of the concealed facts." (FAC ¶ 91). Additionally, "Defendant had a duty to disclose to Plaintiffs and the Class members the existence of artificial flavoring ingredients on the front labels of the Products pursuant to California and federal law." (FAC ¶ 96). Defendant had exclusive knowledge of these material facts and actively concealed them from Plaintiffs. *See Collins,* 202 Cal. App. 4th at 255. Plaintiffs therefore state a claim for fraud by omission.

### 2. *Plaintiffs Adequately State a Claim for Negligent Misrepresentation*

To allege a claim for negligent misrepresentation, a Plaintiff must plead: "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Wells Fargo Bank, N.A. v. FSI, Fin. Solutions, Inc*., 196 Cal. App. 4th 1559, 1573 (2011).

Here, Plaintiffs' FAC adequately alleges a claim for negligent misrepresentation because Plaintiffs allege that "Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the existence of artificial flavoring ingredients." (FAC ¶ 97). Plaintiffs allege that "the Products are labeled as if they are only naturally flavored when in fact they contain an undisclosed artificial flavor, malic acid, in violation of state and federal law." (FAC ¶ 7). Instead of disclosing the use of artificial flavoring, the Products' front label states that the Product is "Made with REAL Fruit & Veggie Juice" and some labels promise that the Products are "naturally flavored" and

- 12 -

contain "NO artificial flavors." (FAC ¶¶ 16-17). Defendant is liable for these affirmative misrepresentations. Further, "Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiffs and the Class members would not have realized the true existence of artificial flavoring ingredients in the Products." (FAC ¶ 98). The FAC also alleges that "Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision" and "Defendant was in a superior position than Plaintiffs and the Class members such that reliance by Plaintiffs and the Class members was justified." (FAC ¶ 86). Plaintiffs allege that they and the class reasonably relied on Defendant's misrepresentations (FAC ¶ 99) and suffered damages thereby. (FAC ¶ 100). Thus, Plaintiffs have sufficiently pled a cause of action for negligent misrepresentation.

### E. Whether a Reasonable Consumer Would be Misled Is Not Appropriate Argument on a Motion to Dismiss

Defendant next argues, "Plaintiffs do not plausibly allege that the label claims "naturally flavored" and 'NO artificial flavors' are false and misleading" and thus reasonable consumers would not be misled because the d-l-malic acid does not "serve a flavoring function in the Snacks" (Def.'s Mot. 13:21 – 14:14). Again, this argument simply denies Plaintiffs' factual allegations. Defendant, in fact, concedes as it must that multiple California district courts have recently denied motions to dismiss malic acid false advertising actions making these same arguments. (*See* Def's Mot. at 15:4-8). In response to these courts' opinions, Defendant simply contends that the courts were wrong. (*See* Def.'s Mot. 15:4-11 "[t]he courts in *Frito-Lay*, *Kellogg*, and *Sims* construed – wrongly in Mott's view – plaintiffs' complaints to have sufficiently alleged that malic acid served a flavoring agent in the foods at issue.").

Plaintiffs have plausibly alleged that the d-l-malic acid is used as a flavoring agent in the Products. (*See* § IV:B at 12, above). Plaintiffs' FAC alleges "Defendant

- 13 -

painstakingly and intentionally designed these Product labels to deceive consumers into believing that there are no artificial ingredients, including artificial flavoring agents or artificial chemicals in their Products. The front label prominently states that the product is 'Made with REAL Fruit & Veggie Juice.'" (FAC ¶ 16). Further, several of the Products affirmatively represent that the Products are "naturally flavored" and made with "no artificial flavors." (FAC ¶ 17). None of the Products contain the legally-required "artificially flavored" disclosure. However, "rather than having 'NO Artificial Flavors' and being 'Naturally Flavored,' as the labels claim – [the Products] contain an undisclosed artificial flavor made from petrochemicals. Defendant conceals this from consumers." (FAC ¶ 22). It is more than plausible that a reasonable consumer would be misled into believing that the products contain only natural flavoring ingredients. *See Hunt v. Sunny Delight Beverages Co.,* No. 818CV00557JLSDFM, 2018 WL 4057812, at *3 (C.D. Cal. Aug. 23, 2018) ("[i]n the absence of such a disclaimer [a front-facing disclaimer regarding the artificial flavoring], the Court cannot conclude as a matter of law that a reasonable consumer would not be misled by the Products' labels."); *see also Kellogg*, 2018 WL 1158885, at *3 ("A reasonable consumer could construe the packaging as depicting all natural ingredients and flavors…The threshold in a Rule 12 motion is necessarily not high, and [plaintiffs have] pled enough facts alleging a reasonable consumer could believe the chips were naturally, and not artificially, flavored."); *Frito-Lay*, 2018 WL 1185227, at *5 ("The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list.").

Defendant cites to an opinion from the Eastern District of Pennsylvania in *Hu v. Herr Foods, Inc*., 251 F. Supp. 3d. 813 (E.D. Pa. 2017) ("*Hu*") in support of dismissal. (*See* Def's Mot. at 14:15 – 15:3). However, the facts in *Hu* differ markedly from the facts in this case because the Plaintiff in *Hu* argued that the ingredient at issue (citric acid) in the product was a preservative "whether or not it ha[d] a preservative function in the Products." The judge in *Hu* stated that "Plaintiff d[id]

- 14 -

not directly allege that citric acid functions as a preservative in any of the Products."
*Hu*, 251 F. Supp. 3d. at 821.  Here however, Plaintiffs allege both that the d-l-malic acid is an artificial flavor *and* that it functions as an artificial flavor in the Products.
*See* FAC ¶ 22 ("[T]he Products – rather than having 'NO Artificial Flavors' and being 'naturally flavored,' as the labels claim –contain an undisclosed artificial flavor made from petrochemicals."); FAC ¶ 114 ("The d-l-malic acid is a flavoring material, which is included in the Products to create, simulate, or reinforce the Products' characterizing fruit flavors."); FAC ¶ 31 (D-l-malic acid "is placed in the Products to simulate a fruity flavor"). Because Plaintiffs plausibly allege that the d-l-malic acid in the Products functions as a flavoring agent, *Hu* is easily distinguishable on the facts.

Further, whether or not a reasonable consumer would be misled "is a question of fact not appropriate for determination [on a motion to dismiss]." *See Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012); *Lilly v. ConAgra Foods, Inc*., 743 F.3d 662, 665 (9th Cir. 2014); *see also Hunt*, 2018 WL 4057812, at *3 ("The Ninth Circuit has instructed that the reasonable consumer standard is usually a factual inquiry rarely suitable for resolution as a matter of law based on the pleadings.") (citations omitted); *see also Frito-Lay*, 2018 WL 1185227, at *5 ("The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list."); *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-VBK, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17, 2011) ("Defendant argues that since partially hydrogenated vegetable oil, which contains trans fat, is disclosed as one of the ingredients in its products, no reasonable consumer could be misled. Although this factor may be relevant in the fact-intensive reasonable consumer analysis, *Williams* instructs that such reasoning cannot be the basis for granting a motion to dismiss."). Defendant's Motion should be denied.

- 15 -

### F.  Plaintiffs Adequately Allege Claims for Breach of Warranties

Defendant argues that there has been no breach of express warranties because "Plaintiff [sic] fails to adequately allege that the … Snacks [] contain artificial flavors" and therefore the statements "naturally flavored" and "no artificial flavors" are true. (Def's Mot. 16:17-22). Again, this argument simply denies Plaintiffs' factual allegations. Further, while it may be true that the Products contain natural flavors, they also contain an artificial flavor. Defendant omits the legally-required artificially flavored disclosure from the Products' front labels and advertises that the Products are solely "naturally flavored."  Because the Products contain the artificial flavoring ingredient d-l-malic acid, the Products do not comply with either the "naturally flavored" or "no artificial flavors" express warranties.

Lastly, Defendant argues that Plaintiffs' implied warranty claims should be dismissed because "Plaintiffs have identified no particular purpose for which they purchased the food" and that Plaintiffs' purpose to seek a naturally-flavored food is an ordinary purpose. (*See* Def's Mot. 17:15-18). Defendant misses the mark here. Plaintiffs allege that the Product was purchased for the specific use as a naturally-flavored food product, and Defendant had reason to know that it was purchased for this use. (FAC ¶ 46, 156). In fact, Defendant knows consumers preferentially seek out natural products; that is why Defendant  labeled its Products with "naturally flavored" and "no artificial flavors" claims. (FAC ¶ 17). However, the Products contain the artificial flavor d-l-malic acid. (FAC ¶¶ 18-32). Because the Products are not naturally-flavored food items as the labels suggest, and are in fact artificially-flavored food items, Plaintiffs have stated a claim for breach of implied warranties as well. *See Hunt*, 2018 WL 4057812 at *6 (Plaintiffs stated a claim for relief when pleading that the Products do not conform to the promise on the labels); *see also Kellogg*, 2018 WL 1158885, at *6 (finding that plaintiffs adequately pleaded a warranty of merchantability claim based on allegations that the product's label did not properly disclose "unhealthy" ingredients).

- 16 -

Further, California law provides for California's statutory warranties of merchantability or implied warranty of fitness for a particular purpose, in addition to the general warranty of merchantability. *See* Cal. Com. Code §§ 2314, 2315; *see also Hunt*, 2018 WL 4057812 at \*6:

> "'The implied warranty of merchantability is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used.' *Frito-Lay*, 2018 WL 1185227, at \*6. 'These are two separate definitions of merchantability.' *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. 2015). Thus, a plaintiff may survive a motion to dismiss by adequately pleading that a product 'did not and does not provide the purported benefits.' *Id.*"

Because Plaintiffs alleged both a breach of fitness for a specific purpose— a naturally-flavored food product— and multiple breaches of the statutory implied warranty of merchantability, by virtue of the fact that the Products are misbranded, as provided for in the California Commercial Code, *supra*, Defendant's arguments and cases cited here are inapposite. Therefore, Defendant's Motion to Dismiss Plaintiffs' claims should be denied.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss the First Amended Complaint in its entirety. If the Court dismisses any portion of the FAC, then Plaintiffs respectfully request leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Dated:     February 4, 2019          Respectfully submitted,


/s/ *Ronald A. Marron*
Ronald A. Marron

- 17 -

1

2     **LAW OFFICES OF RONALD A. MARRON**

3     RONALD A. MARRON

      MICHAEL HOUCHIN

4     LILACH HALPERIN

5     651 Arroyo Drive

      San Diego, California 92103

6     Telephone: (619) 696-9006

7     Facsimile: (619) 564-6665

8     *Attorneys for the Plaintiffs and the Proposed*

      *Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Morris v. Motts, LLP,* Case No. 8:18-cv-01799-AG-ADS
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT